**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RIGOBERTO CEPERO-LLANES** | **CIVIL ACTION NO. 26-0476** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **KRISTI NOEM, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

**REPORT AND RECOMMENDATION**

Petitioner Rigoberto Cepero-Llanes,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 23]. For reasons below, the Court should grant the petition.

**Background**

Petitioner is a citizen of Cuba. He entered the United States of America on approximately March 29, 2019. [doc. # 22, p. 5]. On November 25, 2019, an immigration judge ordered Petitioner removed from the United States to Cuba. [doc.

---

[1] Petitioner's "A Number" is 201-961-644.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

#s 22, p. 5; 23-2, p. 13]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"). *Id.* On May 13, 2020, the BIA dismissed Petitioner's appeal. [doc. #s 22, p. 5; 23-3].

On August 6, 2020, ICE released Petitioner from detention under an Order of Supervision. [doc. #s 22, pp. 2, 5-6; 23-4, p. 3]. On January 8, 2026, the Government re-detained Petitioner. [doc. # 23, p. 8].

Petitioner filed this proceeding on February 16, 2026. [doc. # 1]. In his amended, superseding petition, he first claims: "Despite full compliance and the continued absence of any realistic prospect of removal, ICE has re-detained Petitioner without lawful authority, without the procedural safeguards required by statute and regulation, and without any showing that Petitioner is a danger or a flight risk." [doc. # 22, pp. 2, 9, 12].

Petitioner next claims: "The Government has not identified any significant likelihood of removal in the reasonably foreseeable future, and Cuba has not issued travel documents. Continued detention under these circumstances violates the Due Process Clause of the Fifth Amendment, exceeds statutory authority under 8 U.S.C. § 1231(a)(6) as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), violates binding DHS regulations governing revocation of supervision, and is reviewable and remediable through habeas corpus." [doc. # 22, pp. 2, 10 (underlining removed)]. He adds: "The United States has been unable to remove Petitioner to Cuba. Cuba

has not issued travel documents, and removal has not occurred despite the passage of several years. . . . ICE has not secured travel documents for Petitioner's removal, nor has it identified a country willing to accept him. . . . Respondents have not removed Petitioner despite the passage of several years since the final order of removal . . . . Respondents have not provided Petitioner with a concrete removal plan or a reasonably foreseeable date of removal[,] and Petitioner was previously released under supervision and complied with the conditions of that release." *Id.* at 6, 11 (underlining removed). Petitioner argues, "These facts establish good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future." *Id.* at 11.

Petitioner claims next that the Government violated the Administrative Procedure Act when it revoked his Order of Supervision in violation of statutory and constitutional law. [doc. # 22, pp. 13-15]. Finally, Petitioner claims that the Government violated the *Accardi* doctrine by failing to follow its "own binding rules, procedures, and instructions . . . ." [doc. # 22, p. 15].

Respondents opposed the petition on July 22, 2026. [doc. # 23]. Petitioner filed a reply on July 29, 2026.

**<u>Law and Analysis</u>**

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of

90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. From when his order of removal became final on May 13, 2020, to when the Government first released him on August 6, 2020, Petitioner endured approximately 2 months and 24 days of detention. Then, from when the Government re-detained him on January 8, 2026, to date, he endured (and is enduring) approximately 7 months of detention.

Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Petitioner has endured approximately nine months of detention following his final order of removal, and the Government has been unable to remove him. In addition, Petitioner states: "The United States has been unable to remove Petitioner to Cuba. Cuba has not issued travel documents, and removal has not occurred despite the passage of several years. . . . ICE has not secured travel documents for Petitioner's removal, nor has it identified a country willing to accept him. . . . Respondents have

not removed Petitioner despite the passage of several years since the final order of removal . . . . Respondents have not provided Petitioner with a concrete removal plan or a reasonably foreseeable date of removal[,] and Petitioner was previously released under supervision and complied with the conditions of that release." *Id.* at 6, 11 (underlining removed).

Respondents, in turn, attach the declaration of Assistant Field Office Director Matthew W. Reaves, who declares in pertinent part:

4. On or about November 25, 2019, Petitioner was ordered removed by an Immigration Judge.

5. On or about May 13, 2020, the Board of Immigration Appeals dismissed Petitioner's appeal.

6. On or about May 20, 2020, Petitioner's Emergency Travel Document was uploaded and his case was nominated for removal. On the same day, Petitioner's I-229(a), Warrant of Removal/Deportation, was generated for service on Petitioner. Petitioner I-229(a), Warrant of Removal/Deportation, was served on Petitioner. ERO explained the removal process to the Petitioner. ERO received Petitioner parole redetermination request.

7. On or about May 21, 2020, ERO's recommendation of detention was sent to the Supervisory Detention Deportation Officer after the review of his recent parole request.

8. On or about May 28, 2020, ERO spoke with Petitioner and afforded him an opportunity for his to ask questions regarding his case or if he has any general questions or issues. ERO informed him of his case status and the Post Order Custody Review process. ERO advised him that his parole request was still pending.

9. On or about June 10, 2020, ERO spoke with the Petitioner about his removal process and his parole denial which was sent to his attorney.

10. On or about June 17, 2020, Petitioner submitted his sponsor's information for Post Order Custody Review.

11. On or about June 18, 2020, Petitioner's Final Custody Review was served on Petitioner with him electing to have an interview. Petitioner's interview was west for June 30, 2020. ERO answered questions regarding the Post Order Custody Review process and gave an update on removal efforts to Cuba.

12. On or about June 30, 2020, Petitioner's 90-day Post Order Custody Review Interview was conducted. The staging detention center conducted the interview and answered questions regarding Petitioner's case and removal status.

13. On or about July 9, 2020, ERO spoke with detainee and answered general questions and issues. ERO informed the Petitioner of his case status and the Post Order Custody Review process.

14. On or about July 16, 2020, ERO spoke with detainee and answered general questions and issues. ERO informed the Petitioner of his case status and the Post Order Custody Review process.

15. On or about July 23, 2020, ERO spoke with detainee and answered general questions and issues. ERO informed the Petitioner of his case status and the Post Order Custody Review process.

16. On or about July 29, 2020, Petitioner's 90-day Post Order Custody Review was sent to the Supervisor Detention Deportation Officer.

17. On or about July 30, 2020, Petitioner Post Order Custody Review was reviewed and submitted to the Assistant Field Officer Director for signature. On the same day, ERO spoke to the detainee about pending Post Order Custody Review.

18. On or about July 31, 2020, the Deputy Field Officer Director noted Petitioner's Post Order Custody Review package was received and reviewed. ERO concurred with the release of Petitioner on the Order of Supervision under the following stipulations: release is subject to written conditions on the Order of Supervision and Addendum to the Order off Supervision forms. Petitioner must abide. Petitioner will be required to participate in Alternatives to Detention (ATD) Program which will include the use of Active GPS monitoring, monthly reporting and telephonic reporting. Once the Petitioner is accepted for repatriation, Ero is to take back Petitioner into custody for removal. A violation of any conditions, or of any local, state or federal law will result in re-detention. Release from custody is conditioned upon maintaining proper behavior.

19. On or about August 5, 2020, the Deputy Field Office Director noted the Petitioner would be released on an Order of Supervision with ATD.

20. On or about August 6, 2020, Petitioner was released on an Order of Supervision due to ERO not having a significant likelihood of removal in the reasonably foreseeable future.

21. On or about October 14, 2020, Petitioner was approved by the Government of Cuba ad noted the Petitioner needed to be brought into custody.

22. On or about March 4, 2021, ERO noted Petitioner had been in compliance with the ATD program and that it would be terminated and placed on the OSUP reporting. Ero noted the Petitioner was a Post Order who was accepted by the Government of Cuba for repatriation via the Cuba ERO Headquarters conducted flight. Being that the timeframe for departure was unknown, the Petitioner did not fall as a priority.

23. Petitioner submitted a Motion to Reopen with the Board of Immigration Appeals which was denied on or about November 22, 2021.

24. On or about January 8, 2026, Petitioner was taken back into ICE custody.

25. On or about January 29, 2026, ERO noted that Petitioner was pending flight from ELP El Paso, TX to AEX Alexandria, LA.

26. On or about May 4, 2026, ERO noted the Petitioner was denied by the government of Cuba. Petitioner's third country removal documents were pending.

27. On or about May 28, 2026, ERO submitted an email to ERO Headquarters to nominate the Petitioner for a third country removal to other than Mexico.

28. On or about May 30, 2026, ERO noted the Petitioner would be added to the upcoming flight in June of 2026 to attempt removal from AEX in Alexandria, LA to ELP in El Paso, TX.

29. On or about June 4, 2026, the docket officer noted that the Petitioner was scheduled for a departure flight on June 3, 2026; however, he failed to depart the pod resulting in a Failure to Comply. The Petitioner was subsequently served with a Form I-229.

30. On or about June 24, 2026, a follow up email was sent to ERO Headquarters for subject nomination to a third country removal besides Mexico.

31. On or about July 17, 2026, ERO updated the Petitioner that his case was still pending third country removal other than Mexico.

32. As of the date of this declaration, ERO is actively working to remove Petitioner to a third country outside of Mexico. Procedurally, when a Petitioner refuses to be removed to Mexico in any form, the Government of Mexico refuses to accept them. The Petitioner has not expressed any fear of going to Mexico.

[doc. # 23-4].

That Respondents have not obtained a travel document or effected Petitioner's removal following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future.

Respondents first present only bureaucratic paper shuffling for almost three months before releasing Petitioner. Declarant Reaves even states, "Petitioner was released on an Order of Supervision due to ERO not having a significant likelihood of removal in the reasonably foreseeable future." [doc. # 23-4, p. 3].

Two months later on October 14, 2020, Cuba "approved" Petitioner, and DHS "noted the Petitioner needed to be brought into custody." [doc. # 23-4, p. 3].

The Government then waited five months. On March 4, 2021: "ERO noted the Petitioner was a Post Order who was accepted by the Government of Cuba for repatriation via the Cuba ERO Headquarters conducted flight. Being that the timeframe for departure was unknown, the Petitioner did not fall as a priority." [doc. # 23-4, p. 3].

The Government was then idle for approximately five years. [doc. # 23-4, p. 3]. Next, on May 4, 2026, Cuba declined to accept Petitioner.

Respondents next present: a failed attempt to transport Petitioner from Alexandria, Louisiana, to El Paso, Texas due to Petitioner's failure to comply (which the undersigned discusses below), two ostensibly unanswered emails to "ERO

Headquarters to nominate Petitioner for a third country removal, and unspecified "active[] working to remove Petitioner to a third country[.]" [doc. # 23-4, p. 3].

At bottom, Respondents present little indication that sufficient progress will occur in the reasonably foreseeable future. The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

Respondents have not even identified a definitive third country for Petitioner's removal following their efforts described above. And they do not state how long the process will take after identifying a specific country. Yet, they still detain him. While not dispositive, the undersigned finds it persuasive that the Government has been unable to remove Petitioner for over 6 years following his final order of removal.

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[4] They do not, for example, provide any evidence that they

---

[4] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*,

have made progress in obtaining travel documents, that they have been communicating with a third country about removing Petitioner, that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[5, 6]

2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[5] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[6] *See generally Heagan v. Jolicoeur*, 2006 WL 897709, at *3 (W.D. Tex. Mar. 31, 2006) ("Other than providing evidence that they are working with the governments of Liberia and Ghana to establish Petitioner's identity, Respondents have not presented evidence regarding the time period that they will need to establish Petitioner's identity. Nor have the Respondents, using their significant expertise, established any time period in which they believe they will be able to effectuate Petitioner's removal . . . . Respondents have not provided the Court with, nor does the Court envision, a way to determine whether the Liberian, Nigerian or Ghanian governments will issue the necessary travel documents to effect Petitioner's removal in the reasonably foreseeable future."); *Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents,

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

Respondents even suggest that obtaining travel documents is beyond their control. They state specifically that the "processes for obtaining a temporary travel document from another country are complex, multi-faceted, and include considerations of diplomacy that are beyond the control of ICE." [doc. # 23, p. 11]. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas,* 533 U.S. at 702. Although

---

timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Finally, Respondents argue that Petitioner thwarted efforts to remove him when he refused to "depart the pod" to board a flight to Texas. [doc. # 23, p. 14]. They argue, "This blatant refusal to comply, which the Petitioner does not mention in his petition, precludes him from relief under *Zadvydas* and tolls the running of the 90 days plus six-month period." *Id.*

Respondents' attached declaration, however, tells a different story. According to Declarant Reaves, Petitioner did not cooperate in boarding a flight to El Paso, Texas. [doc. # 23-4, p. 3]. Reaves does not declare that Petitioner failed to cooperate in boarding a flight to another country.[7] And Respondents do not explain the significance of Petitioner's failure to cooperate in his transportation to Texas. To be sure, Respondents argue that Petitioner refused to cooperate when "ERO attempted to remove him to Mexico and had a flight scheduled[,]" but Respondents do not provide any evidence in support.

Also of import, the Government appears to argue that Petitioner's non-cooperation forced it to consider countries other than Mexico for Petitioner's

[7] Respondents even acknowledge in their response: "On or about May 30, 2026, ERO noted the Petitioner would be added to the upcoming flight in June of 2026 to attempt removal from AEX in Alexandria, LA to ELP in El Paso, TX." [doc. # 23, p. 8].

removal because Petitioner refused removal to Mexico. Again, however, Respondents provide no evidence in support. Rather, the attached declaration shows that the Government attempted to "nominate the Petitioner for a third country removal to other than Mexico" on May 28, 2026, approximately one week *before* Petitioner refused to "depart the pod." [doc. # 23-4, p. 3].

Respondents appear to suggest that Petitioner must have "expressed his refusal to be removed to Mexico" because "on May 28, 2026, ERO submitted an email [to] ERO Headquarters to inquiry [sic] about a third country removal to other than Mexico." [doc. # 23, pp. 13-14]. But Respondents do not provide any evidence; Declarant Reaves does not declare that Petitioner ever refused removal to Mexico. Declarant Reaves states: "ERO is actively working to remove Petitioner to a third country outside of Mexico. Procedurally, when a Petitioner refuses to be removed to Mexico in any form, the Government of Mexico refuses to accept them." [doc. # 23-4, p. 3]. However, Reaves qualifies that "Petitioner has not expressed any fear of going to Mexico." *Id.*

In *Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993), the Fifth Circuit held "that if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about." Here, however,

Respondents do not provide any evidence indicating that Petitioner actually impeded his removal. Otherwise stated, they provide no evidence indicating that they were powerless to remove Petitioner to Mexico because of Petitioner's actions (or inaction).

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[8]

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Rigoberto Cepero-Llanes' petition for habeas corpus be **GRANTED**: Respondents, and the Warden of El Paso Camp East Montana, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that any possible or anticipated removal or transfer of Petitioner under this present detention be **PROHIBITED**.[9]

---

[8] The undersigned finds no need to address any claim or request for relief not addressed herein.

[9] In other words, it is the intent of the Court that Petitioner shall not be released only to be immediately taken back into custody. The Court expresses no opinion as to whether Petitioner could or should be taken into custody at a later date if travel documents were to be obtained.

Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*****, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 3rd day of August, 2026.

Carol B. Whitehurst
United States Magistrate Judge